IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| iKey, Ltd. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action   NO.1:12-cv-173 |
| | § | |
| iKeyboard, Inc. | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

iKey, Ltd. ("iKey") complains of iKeyboard, Inc. ("iKeyboard"), and for cause of

action shows as follows

### I.

#### NATURE OF CASE

1.      This is a trademark infringement and unfair competition case.  The parties are

competitors in the business of manufacturing and selling computer peripherals, including,

as pertinent here, computer keyboards.  iKey is headquartered in, and builds and tests its

products in Austin, Texas.  iKey does business nationally and internationally.  For many

years, iKey has used the name and mark "IKEY" to identify the company and its

products.  iKey conducts substantial business by way of the Internet and does so through

the domain name "iKey.com" and a variety of email addresses designated to be

"@iKey.com."   Similarly, re-sellers of iKey products conduct substantial business by

way of the Internet.  Internet references to iKey and iKey's products are, and have long

been, pervasive.   iKey's use of the mark IKEY in the United States and throughout the

world for computer peripherals and keyboards dates back to 1999.  In this regard, iKey

filed its first application for registration of the mark IKEY with the United States Patent

and Trademark Office ("USPTO") in 2000.  Since then, four federally registered marks

for IKEY have been issued to iKey, covering, as pertinent here, computer peripherals,

including specifically computer keyboards.  Sales of goods under the IKEY marks yield,

and have long yielded, many millions of dollars in annual revenues.

2.      Defendant is a start-up company, seeking to promote and sell computer

keyboards.  In January 2011, acting with notice of iKey and its long-standing marks,

Defendant incorporated under the laws of Delaware.  In the face of iKey's by then long-

established dominance in the computer peripheral and keyboard markets, Defendant

chose the corporate name "iKeyboard, Inc."  Defendant had to be aware of the existence

and scope of the iKey Marks, having had initiated, in March 2010, an effort to secure

"iKeyboard" as a federally registered trademark for its anticipated product.  Acting

through Clifford Thier, an attorney who founded Defendant and serves as its current chief

executive officer, Defendant filed, and has since pursued, a United States Trademark

Application for the term "IKEYBOARD," to be used for a class of goods including

"computer peripherals" and, specifically, "computer keyboards."  In connection with that

application, Defendant asserts that it has made actual, commercial use of the term

IKEYBOARD for computer keyboards, commencing in July 2011.  Defendant conducts

its business largely, if not exclusively, by way of the Internet and under the name

"iKeyboard, Inc."  Defendant solicits direct sales by means of interactive web-site.

2

Defendant obtained, and uses the domain name "ikeyboard.com" for this purpose. Defendant conducts its business also through one or more email addresses that include the term "@ikeyboard.com."   If not before, by no later than January 2012, Defendant began shipping material quantities of its so-called "iKeyboard" product to customers throughout the United States, including Texas residents.

3.      Upon discovery of the foregoing conduct, iKey made demand upon Defendant to cease and desist, in its marketing and sale of computer keyboards, from the use of "iKeyboard" as a tradename, trademark, domain name or other identifier.  Defendant failed to comply with iKey's demand.  iKey accordingly seeks in this action to enjoin Defendant from infringing upon iKey's marks and otherwise engaging in unfair competition.  iKey additionally seeks damages and other relief  as allowed by statute and common law.

## II.

### PARTIES, JURISDICTION AND VENUE

4.      Plaintiff is a Texas limited partnership with its principal place of business in Austin, Texas.

5.      Defendant is a Delaware corporation with its principal place of business in West Hartford, Connecticut.   Defendant has purposefully directed its activities toward Texas residents within this District, has done business within this District, and otherwise has, or had, as of the filing of this action, contacts within this District sufficient to subject it to the Court's proper exercise of personal jurisdiction over Defendant, both generally and with respect to the claims at issue herein.  Without limitation of the foregoing, Defendant has, by way of acts infringing upon iKey's trademarks and tradename or otherwise

constituting unfair competition, actively sought and/or secured financial backing and pre-orders of its products from Texas residents within (and without) this District, and, either in conjunction therewith or independently thereof, has actively marketed, promoted and/or arranged for the sale and delivery of its products to Texas residents within (and without) this District.  Although Defendant conducts business in the State of Texas and is required to designate and maintain a resident agent in Texas for the service of process, it has failed to do so.    Defendant may accordingly be served, pursuant to Fed. R. Civ. P. Rule 4(h)(1)(A) and Tex. Civ. & Prac. Rem. Code §§17.041 *et seq.*,  with process by serving duplicate copies of the summons and complaint upon the Secretary of State for the State of Texas, who shall upon receipt mail a copy of such process to Defendant at its home office address as follows:  iKeyboard, Inc., 1117 Farmington Ave., West Hartford, CT   06107.  Alternatively, Defendant may be served, pursuant to Fed. R. Civ. P. Rule 4(h)(1)(B), by delivering the summons and complaint to its registered agent for service, National Registered Agents, Inc. 160 Greentree Drive, Suite 101, Dover, Delaware 19904.

6.    This Court has subject matter jurisdiction in that the First, Second and Third Claims for Relief arise under the Lanham Act of 1946, as amended, 15 U.S.C. §§ 1051 *et seq.*,  28 U.S.C. §1331, 28 U.S.C. §1338 and 15 U.S.C. §1121.

7.    The Fourth and Fifth Claims for Relief arise under Texas statutory or common law. This Court has subject matter jurisdiction over the state law claims under the doctrine of supplemental jurisdiction, embodied in 28 U.S.C. §1367, because the federal and state claims are based on the same operative facts and are so related to claims over which the Court has original jurisdiction that they form part of the same case or

controversy under the provisions of Article III of the United States Constitution.  Judicial economy, convenience, and fairness to the parties will result if this Court assumes and exercises jurisdiction over the state-law claims.

8.      Venue is proper in this District and Division pursuant to 28 U.S.C. §1391(b) because: (a) a substantial part of Defendant's acts and other events or omissions giving rise to iKey's claims occurred and are occurring in this District, including at locales within this Division; (b) iKey's trademark rights and other property at issue are situated in this District and Division; and (c) Defendant's acts have caused damage to iKey in this District and Division.  Such acts have damaged iKey, and, if not enjoined are likely to continue damaging its property in this District.

## III.

### FACTUAL BACKGROUND

9.      iKey is a leading manufacturer and seller of computer peripheral devices, including, in particular, computer keyboards, pointing devices and flat panel monitors. iKey designs, manufactures and sells a wide array of computer keyboards, with varying features, that are designed to meet heightened standards of reliability and durability, as well as a range of use-specific needs.  By way of example only, iKey sells keyboards that are waterproof, shock-resistant, operable at extreme temperatures, and resistant to electro-magnetic pulses.   iKey has developed a well deserved reputation for building innovative, high quality, "industrial grade" peripheral devices.  iKey sells its products both as "stand alone" products and as components of systems assembled and marketed by others.  iKey sells to a wide spectrum of customers, ranging from individual or small

office consumers to multi-national corporations.  iKey customers include, for example, industrial, material handling, medical, military and public safety entities.

10.     iKey has been in the business of marketing and selling computer peripheral devices for many years.  iKey was formed as a limited partnership under that name in 2000, but did business prior to that time as Texas Industrial Peripherals and Key Industrial Peripherals. Its common law rights to the iKey trademark date back to at least 1999 and have been established and cultivated through extensive, commercial use of the mark in Texas, much of the United States, and many global markets.

11.     In addition to its common law trademark rights, iKey owns several active registered marks, as follows:

        a.      three (3) listed on the Principal Register of the USPTO in International Class 009 that include the term IKEY, namely:  i) United States Registration No. 3,578,949 (IKEY word mark); ii) United States Registration No. 3,578,983 (IKEY and design); and iii) United States Registration No. 3,817,174 (INPUT IKEY, OUTPUT SUCCESS, word mark); and

        b.      one (1) listed on the Supplemental Register of the USPTO for IKEY, namely: United States Registration No. 3,072,218 (these four marks are referred to individually or collectively as the "IKEY Marks").   True and correct copies of the foregoing registrations of the IKEY Marks are attached as Exhibits 1 through 4 hereto, and incorporated herein.  The IKEY Marks are inherently distinctive.  Moreover, and irrespectively, the IKEY Marks have acquired additional distinctiveness as a result of iKey's continuous, successful commercial use and development of such marks.  The goods represented by and marketed under the IKEY Marks include but are not limited to:

"computer peripherals, namely, keyboards, industrial flat panel displays, keyboard extenders, wireless keyboards, industrial computer enclosures, and pointing devices, namely, mice, trackballs and touch pads" (collectively, the "Goods").

12.     Known for its high standards of excellence, iKey has developed immeasurable and highly valuable goodwill in its marks. As a result of the extensive use by iKey of its marks, including the IKEY Marks, and the quality of the Goods that it offers, the IKEY Marks have become well-known in the computer peripheral market and within companies that regularly purchase the Goods.  Although iKey now does business throughout the United States and major world markets, the company was founded in Texas, its headquarters are in Texas and iKey and the IKEY Marks are particularly well-known throughout Texas.

13.     Defendant competes with iKey in Texas and throughout the United States. As more particularly reflected in its website, Defendant advertises, via its website "iKeyboard.com," that it manufactures and sells a computer peripheral, namely a keyboard that is said to interface with pad-style computers, which it denominates as an "iKeyboard."  Through its website, which is interactive in nature, it solicits orders for the purchase of its products, apparently to be effected through Amazon.com.  Defendant's website is accessible throughout Texas and the United States.  Moreover, customer access to the website is apparently promoted through Defendant's use of the imbedded search term "ikeyboard."

14.     Defendant incorporated in Delaware under the name iKeyboard, Inc. in January 2011.  Prior to that, in March 2010, Defendant filed for a Federal trademark registration, United States Trademark Application No. 77/958497 ("Defendant's US Trademark Application"), seeking to register the term IKEYBOARD ("Defendant's Proposed

Mark") in International Class 009 for the following goods: computer hardware and computer peripheral devices. Defendant subsequently amended Defendant's US Trademark Application, limiting coverage of Defendant's Proposed mark to one type of good: a computer keyboard, and alleging that its first commercial use of Defendant's Proposed Mark occurred on July 18, 2011.   The USPTO has not registered Defendant's Proposed Mark.

15.      In addition to establishing its own "iKeyboard.com" website, and in or prior to March 2011, Defendant contracted with Kickstarter.com, a third party business promoter, to appear on its website, to promote its name, to advertise and create "buzz" concerning its forthcoming "Ikeyboard" product, to solicit development funds for its "iKeyboard" project, to secure, essentially, pre-orders of its product, and to identify and cultivate relationships with potential customers.   Kickstarter boasts of not merely a nation-wide but world-wide audience.  Kickstarter's website reveals that Defendant's marketing and sale efforts through its and Kickstarter's websites extended to Texas and brought about intended results there.  Among other things, Defendants' efforts resulted in Defendant securing the agreement of multiple Texas residents, including several residing within this District, to become financial "backers" of the "iKeyboard" product.  The consideration offered by Defendant to those "backers" who donated thirty dollars ($30.00) or more included delivery of the first (or first and second) versions of the "iKeyboard" product. In essence, Defendant successfully used Kickstarter to pre-sell its product.  Through Kickstarter, Defendant interacted with "backers" by fielding and responding to emails on an individual basis and by sending general updates with respect to product development, product features, and anticipated delivery dates.  As part of this iterative process,

Defendant actively solicited and cultivated customers who were known to be Texas residents, including several residing within the Western District and Austin Division.  It appears from the Kickstarter website that Defendant ultimately sold and delivered "iKeyboard" products to one or more of such customers, for consideration either in the form of initial financial "backing" or in the form of purchase consideration.  The foregoing uses by Defendant of the term "iKeyboard" were and are in substantial direct competition with iKey and were and are taken for the purpose of trading on the goodwill and value iKey has created in its name and marks.  Each of Defendant's uses of the term "Ikeyboard" or "iKeyboard" as a trade name, as a business name, and as a mark causes or is likely to cause confusion with consumers concerning the source of the iKey's and Defendant's respective goods.

16.     iKey has made oral and written requests for Defendant to cease its unlawful use of the "IKEYBOARD" name and marks.  In early February 2012, counsel for iKey sent a letter notifying Defendant of iKey's concerns regarding Defendant's use of the trade name and mark IKEYBOARD, use of the domain name ikeyboard.com and the email address @ikeyboard.com, and asking that (a) Defendant cease using the trade name and mark IKEYBOARD in its marketing and sale of the same goods as those long sold by iKey and (b) that it withdraw and abandon Defendant's  US Trademark Application.  A true and correct copy of the demand letter is attached hereto as Exhibit 5 and incorporated herein.  Neither the demand letter nor a subsequent telephone conference between counsel for the parties prompted Defendant to comply with these requests.  Despite such demand, Defendant has continued its wrongful use of "iKeyboard" as a trade name, domain name, and mark in the marketing and sale of computer keyboards..

## IV.

### CAUSES OF ACTION

.

### First Claim for Relief: Infringement of a
### Registered Trademark [*15 U.S.C § 1114 (1)*]

17.     iKey incorporates the allegations set forth in the foregoing paragraphs of its

Complaint as if fully set forth herein.

18.     iKey has continuously used its IKEY Marks in interstate commerce since at least

as early as January 1, 1999.

19.     iKey, as the owner of all right, title, and interest in and to United States

Registration No. 3,578,949, United States Registration No. 3,578,983, United States

Registration No. 3,817,174  and United States Registration No. 3,072,218, has standing

to maintain an action for trademark infringement under the Federal Trademark Statute,

Lanham Act §32(1) (15 U.S.C § 1114 (1)).

20.     Defendant, without iKey's consent, has imitated the IKEY Marks by using the

term IKEYBOARD as, or as part of, a mark, tradename and domain name.  Defendant

has applied such marks to computer keyboards, labels, signs, prints and advertisements

used in commerce upon or in connection with the sale, offering for sale, distribution

and/or advertising of computer keyboards.  Such use is likely to cause confusion or

mistake, and/or to deceive consumers, purchasers and/or potential purchasers.

21.     Defendant's acts have been and continue to be committed with knowledge of

iKey's exclusive rights and goodwill in the IKEY Marks, in bad faith and with the intent

to cause confusion or mistake, and/or to deceive consumers, purchasers and/or potential

purchasers.

22.     As a result of Defendant's willful trademark infringement, iKey has suffered and will continue to suffer substantial and irreparable injury, loss, and damage to its rights in and to the IKEY Marks and the goodwill associated therewith, for which it has no adequate remedy at law.

23.     Due to the acts of Defendant, iKey has suffered and will continue to suffer losses, including loss of business opportunities, and, if not enjoined, Defendant will continue to unfairly derive income, profits, and business opportunities as a result of its acts of infringement.

24.     iKey seeks and is entitled to injunctive relief, as well as monetary damages and other remedies provided by 15 U.S.C. §§1116, 1117, and 1118, including treble damages, a reasonable attorney's fee, and prejudgment interest pursuant to 15 U.S.C. § 1117(b).


## Second Claim for Relief:  Federal
## False Advertising [*15 U.S.C § 1125 (a) (1)(B)*]

25.     iKey incorporates the allegations set forth in the foregoing paragraphs of its Complaint as if fully set forth herein.

26.     Defendant has used and continues to use, in interstate commerce, false and/or misleading descriptions and/or representations of fact in commercial advertising or promotion which misrepresent the nature, characteristics, and/or qualities of its product and identity which are likely to cause confusion or to cause mistake or to deceive as to the affiliation, connection, or association of the Defendant with iKey, or as to the origin, sponsorship, or approval or the Defendant's goods by iKey.  Defendant's use of the name and mark IKEYBOARD is likely to deceive or cause confusion or mistake as to source or origin of iKey's goods or services.

27.     Upon information and belief, Defendant's false and misleading statements have deceived or have the tendency to deceive a substantial segment of their audience, including consumers, purchasers and/or potential purchasers.

28.     Each of Defendant's false and misleading statements is material in that it is likely to influence the purchasing decisions of actual and/or prospective purchasers of the iKey Goods.

29.     iKey has been or is likely to be injured as the result of Defendant's false and misleading statements by, *inter alia*, the diversion from itself to the Defendant of current and/or potential consumers and purchasers and/or the lessening of the goodwill which iKey enjoys with its current and/or prospective customers.

30.     Defendant's acts have been committed willfully, in bad faith, and with the intent to misrepresent the nature, characteristics, qualities, or geographic origin of the iKey goods.

31.     Due to the acts of the Defendant, iKey has suffered and will continue to suffer losses, including loss of business opportunities, and, if not enjoined, Defendant will continue to unfairly derive income, profits, and business opportunities as a result of its acts of false advertising.

32.     iKey seeks and is entitled to injunctive relief, as well as monetary damages and other remedies provided by 15 U.S.C. §§1116, 1117, and 1118, including treble damages, a reasonable attorney's fee, and prejudgment interest pursuant to 15 U.S.C. § 1117(b).


**Third Claim for Relief:  Federal
Unfair Competition [*15 U.S.C § 1125 (a) (1)(A)*]**

33.     iKey incorporates the allegations set forth in the foregoing paragraphs of its Complaint as if fully set forth herein.

34.     Defendant's use, in interstate commerce, of the trade name and mark IKEYBOARD, the domain name ikeyboard.COM and the email address @ikeyboard.COM is intended to mislead the public and to lead to confusion and mistake, or to deceive the public and the trade as to the affiliation, connection or association of iKey or its Goods with IKEYBOARD or its products.  Each of Defendant's acts as set forth herein constitutes unfair competition.  Defendant's acts have been committed willfully, in bad faith with the intent to cause confusion, and to mislead, and/or to deceive.

35.     iKey has suffered, and, if Defendant is not enjoined from its wrongful acts, iKey will continue to suffer substantial and irreparable injury, loss, and damage for which it has no adequate remedy at law.

36.     iKey seeks and is entitled to injunctive relief, as well as monetary damages and other remedies provided by 15 U.S.C. §§1116, 1117, and 1118, including treble damages, a reasonable attorney's fee, and prejudgment interest pursuant to 15 U.S.C. § 1117(b).


**Fourth Claim for Relief:  Dilution and Injury**
**Injury to Business Reputation [Tex. Bus. & Com. Code §16.29]**

37.     iKey incorporates the allegations set forth in the foregoing paragraphs of its Complaint as if fully set forth herein.

38.     iKey has continuously used its IKEY Marks in Texas since at least as early as January 1, 1999.

39.     Defendant, without iKey's consent, has imitated the IKEY Marks in Defendant's use of the trade name IKEYBOARD, the mark IKEYBOARD, the domain name ikeyboard.com and the email address @ikeyboard.com.  Defendant has wrongfully applied such marks to labels, signs, prints and/or advertisements used in commerce upon or in connection with the sale, offering for sale, distribution and/or advertising in Texas of computer keyboards.  Such use by Defendant is likely to cause confusion or mistake, and/or to deceive consumers, purchasers and/or potential purchasers.

40.     Defendant's acts have been committed with knowledge of iKey's exclusive rights and goodwill in the IKEY Marks, as well as with bad faith and the intent to cause confusion or mistake, and/or to deceive consumers, purchasers and/or potential purchasers.

41.     As a result of Defendant's willful trademark infringement in Texas, iKey has suffered and will continue to suffer substantial and irreparable injury, loss, and damage to its rights in and to the IKEY Marks and the goodwill associated therewith, for which it has no adequate remedy at law.

42.     The IKEY Marks are inherently distinctive and/or have become distinctive of its goods and services.

43.     Defendant's use of the term IKEYBOARD as trade name, mark, domain name and email address in Texas causes dilution of the distinctive quality of the IKEY Marks and IKEY trade name and injures iKey's business reputation.

44.     iKey has suffered, and, if Defendant is not enjoined from its wrongful acts, iKey will continue to suffer substantial and irreparable injury, loss, and damage for which it has no adequate remedy at law.

14

45.     As the acts alleged herein are willful and deliberate for the purpose of trading on iKey's reputation and constitute dilution under Texas Trademark Act, Tex. Bus. & Com. Code §16.29, and, as iKey has no adequate remedy at law, iKey seeks and is entitled to injunctive relief.

### Fifth Claim for Relief:  Unfair Competition
### [Under Texas Common Law]

46.     iKey incorporates the allegations set forth in the foregoing paragraphs of its Complaint as if fully set forth herein.

47.     Defendant's use, in Texas, of the trade name and mark IKEYBOARD, the ikeyboard.com domain name and the email address @ikeyboard.com is intended to and is likely to mislead the public and lead to confusion and mistake.  Defendant's acts have been committed willfully and in bad faith with the intent to cause confusion, and to mislead, and/or to deceive.

48.     iKey has suffered and will continue to suffer substantial and irreparable injury, loss, and damage for which it has no adequate remedy at law.

49.     Due to the wrongful acts of the Defendant, iKey has suffered will continue to suffer losses, including loss of business opportunities, and, if not enjoined, Defendant will  continue to unfairly derive income, profits, and business opportunities as a result of its wrongful acts.

50.     iKey seeks and is entitled to injunctive relief, as well as monetary damages and other remedies provided by law.

**V.**

## PRAYER FOR RELIEF

WHEREFORE, iKey requests that, upon hearing, the Court make the following

determinations and grant the following relief:

a.  That Defendants infringed the IKEY Marks and diluted the IKEY Marks, and

   engaged in unfair competition, false advertising, and trade disparagement;


b.  That, upon separate application therefor, Defendant be preliminarily enjoined, and

   that upon trial it be permanently enjoined, along with its assignees, transferees,

   employees, agents and representatives and all other persons, firms or entities acting in

   concert or participating with it, from:

   1) using, displaying, advertising, promoting, registering, transferring or

   assigning, including on or in connection with any product, services,

   promotional items, domain name or web sites, the IKEYBOARD mark,

   the iKey Marks, or any confusingly similar name or trademark;

   2) doing or allowing any act or thing calculated or likely to cause

   confusion or mistake in the minds of members of the public, the trade,

   or the purchasers or prospective purchasers as to the source of

   Defendant's goods, or likely to deceive members of the public, trade,

   or purchasers or prospective purchasers of Defendant's goods into

   believing that there is some association, connection or affiliation with

   and/or sponsorship or approval by iKey of Defendant or its products;

   3) doing or allowing any act or thing which is likely to dilute the IKEY

   Marks or otherwise injure iKey's business reputation or goodwill; and

4) engaging in other or further acts of federal, state or common law trademark or trade name infringement, dilution, false advertising, unfair competition or trade disparagement that would damage or injure iKey and the IKEY Marks.

c.  That Defendant, pursuant to 15 U.S.C. §1118, be ordered to deliver up for destruction all goods, labels, signs, prints, packages, wrappers, receptacles, advertisements and other materials in the possession of Defendant bearing:

1)  the IKEYBOARD mark, the IKEY Marks, or any other confusingly similar trademark, service mark, trade name, or domain name, or any colorable imitation thereof; or

2)  any false or misleading description or representation of fact likely to damage iKey.

d.  That Defendant, pursuant to 15 U.S.C. § 1116(a) be directed to file with this Court and serve upon iKey within thirty (30) days after entry of an injunctive decree a report in writing under oath setting forth in detail the manner and form in which it has complied with the injunction;

e.  That Defendant's acts of trademark infringement, dilution, false advertising, trade disparagement, and acts of unfair competition were knowing and willful;

f.   That an accounting be ordered of all profits realized by Defendant, or others acting in concert or participation with Defendant, from Defendant's unauthorized use of marks confusingly similar to the IKEY Marks, and acts of unfair competition, false designation of origin, false advertising, dilution, and trade disparagement; and

g.   That Defendant account for and pay over to iKey all of the profits realized by Defendant or others acting in concert or participation with Defendant, from Defendant's unauthorized use of the IKEY Marks or any confusingly similar trademarks, and acts of unfair competition, false designation of origin, false advertising, dilution, and trade disparagement.

h.   As applicable to all claims, that iKey be awarded damages in an amount to be ascertained pursuant to applicable laws, including, without limitation  15 U.S.C. U.S.C. § 1117(a);

i.   That iKey be awarded treble damages pursuant to applicable laws, including, without limitation, 15 U.S.C. § 1117(b);

j.   That iKey be awarded prejudgment interest pursuant to applicable laws, including, without limitation  15 U.S.C. § 1117(b);

k.   As to all claims, that iKey be awarded a reasonable attorney's fee pursuant to applicable laws, including, without limitation  15 U.S.C. § 1117(b);

l.   That iKey be awarded Defendant's profits pursuant to applicable laws, including, without limitation, 15 U.S.C. § 1117(a);

m.  As to all clams, that iKey recover the costs of this suit; and

n.   That a permanent injunction be ordered upon final trial of this cause, enjoining the Defendant from using the trade name or mark IKEYBOARD on or with respect to the Goods, including but not limited to using the domain name ikeyboard.com and email address @ikeyboard.com in any manner in connection with the marketing or sale of the Goods.

o.   . That iKey be granted such other and further relief as the Court deems just and proper.

Respectfully submitted,

Albright & Albright, LLP

By:     /s/  [signature on file]
        William J. Albright
        State Bar No. 00974550

14916 Crosscreek
Austin, TX   78737
(512) 716-8402
balbright@albrightllp.com

**Attorney for Plaintiff**

Of Counsel:

Ms. Gail Taylor Russell
Taylor Russell & Russell, PC
10601 FM 2222, Suite R-12
Austin, TX   78730-1134
(512) 338-4601